UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GABRIEL ECKARD,

      Plaintiff,

 v.

TY TRENARY, *et al.*,

      Defendants.

Case No. C19-880-JCC-MLP

REPORT AND RECOMMENDATION

## I.   INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Gabriel Eckard is currently confined in the Snohomish County Jail ("Jail") in Everett, Washington as a pretrial detainee. Plaintiff asserts in his complaint that Defendants have violated his due process rights by sanctioning him with the loss of good conduct time for violations of Jail rules, time which he claims will ultimately be applied to a potential post-conviction sentence. (*See* Dkt. # 5.) Plaintiff alleges that punishing him in this fashion prior to an adjudication of guilt violates his rights under the Fourteenth Amendment. (*Id.*) Plaintiff identifies the following Jail officers and employees as Defendants in his complaint: Ty Trenary, Anthony Aston, Kimberly Parker,

REPORT AND RECOMMENDATION
PAGE - 1

Charles Mitchell, Alexis Wafstet, John Leopold, Shannon Dilley, and Terry Bloss. (*Id*. at 2-3.) Plaintiff seeks declaratory and injunctive relief, and damages. (*Id*. at 6-7.)

Shortly after the Court issued its Pretrial Scheduling Order in this action (dkt. # 17), Plaintiff filed a motion seeking summary judgment (dkt. # 18). Defendants filed a response to Plaintiff's motion together with a cross-motion for summary judgment. (Dkt. # 19.) Plaintiff has not responded to Defendants' summary judgment motion despite having been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). Plaintiff has, however, filed a separate motion seeking to dismiss one of the named Defendants, Alexis Wafstet. (Dkt. # 21.)

The Court, having now reviewed Plaintiff's complaint, the parties' pending dispositive motions, and the balance of the record, concludes that Plaintiff's motion for summary judgment (dkt. # 18) should be denied, Defendants' unopposed cross-motion for summary judgment should be granted (dkt. # 19), and Plaintiff's motion to dismiss Defendant Wafstet (dkt. # 21) should be stricken as moot. The Court further concludes that Plaintiff's complaint (dkt. # 5) and this action should be dismissed with prejudice.

## II.   BACKGROUND

Plaintiff was booked into the Jail on September 4, 2018. (Dkt. # 5, ¶ 13.) Since that time, Plaintiff has been infracted for numerous rule violations and, as a result, has been sanctioned by classification staff to the loss of all good conduct time for those infractions. (*Id*., ¶¶ 13, 15.) Plaintiff was afforded disciplinary infraction hearings prior to being sanctioned with the loss of good conduct time. (*Id*., ¶ 18.) According to Plaintiff, because his criminal charges have not yet been adjudicated, he is not currently under sentence for a crime and he therefore has no good conduct time to lose. (*Id*., ¶ 14.) Plaintiff expects that the Jail staff will apply the loss of what he

identifies as "future" good conduct time to a potential post-conviction sentence. (*See id.*, ¶¶ 15, 19.)

### III. DISCUSSION

#### A. Applicable Standards

##### 1. Summary Judgment Standard

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at

585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

        2.      Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

B.   Analysis

Plaintiff asserts in his motion for summary judgment that Defendants have taken away all possible good time credit that would be applied to a potential post-conviction sentence. (*See* Dkt. # 18 at 1.) Plaintiff argues that Defendants' actions will lengthen any such post-conviction sentence and that he is therefore being punished for his pending criminal charges prior to an adjudication of guilt, in violation of his rights under the Fourteenth Amendment to the United States Constitution.[1] (*See id*. at 1-2, 5.) Defendants argue in their cross-motion for summary judgment that Plaintiff does not have a standalone Constitutional right to credit for good conduct time. (Dkt. # 19 at 4-5.) Defendants further argue that Plaintiff's right to earn good time credit, and Defendants' right to reduce it, are governed by state law and do not implicate due process concerns. (*See id*. at 5-8.)

The United States Supreme Court has observed that the Constitution does not guarantee good time credit for satisfactory behavior while in prison. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). However, where a state has created a statutory right to good time credits, deprivation of such credits may be subject to certain due process protections. *Id*. Washington has created a process which permits prisoners, such as Plaintiff, who are confined in county jail facilities, to earn early release credits for good behavior. *See* RCW 9.92.151. That statute provides in relevant part as follows:

> Except as provided in subsection (2) of this section, the sentence of a prisoner confined in a county jail facility for a felony, gross misdemeanor, or misdemeanor conviction may be reduced by earned release credits in accordance with

---

[1] Plaintiff also argues in his summary judgment motion that he is being punished for his poverty because, if he had been able to afford to pay a monetary bail, he would not have been detained and would not have lost any good time. (*See* Dkt. # 18 at 5-6.) This claim was not asserted in Plaintiff's complaint and is therefore not properly before the Court. Plaintiff acknowledges in his summary judgment motion that this claim is not the focus of the instant action. (*Id*. at 5.)

REPORT AND RECOMMENDATION
PAGE - 5

procedures that shall be developed and promulgated by the correctional agency having jurisdiction. The earned early release time shall be for good behavior and good performance as determined by the correctional agency having jurisdiction. Any program established pursuant to this section shall allow an offender to earn early release credits for presentence incarceration. The correctional agency shall not credit the offender with earned early release credits in advance of the offender actually earning the credits.

RCW 9.92.151(1).

The Washington Supreme Court, in *In re Talley*, 172 Wn.2d 642, 652 (2011), held that RCW 9.92.151 requires a county jail to provide opportunities for presentence inmates to earn credit towards early release. However, the court also noted in its opinion that such credits are subject to forfeiture based on a prisoner's conduct while confined:

> Our holding does not entail that every presentence inmate *must actually* earn good-time credit in a county jail. An offender may forfeit the opportunity to receive good-time credit by the offender's own misbehavior or poor performance. However, former RCW 9.92.151(1) requires that the offender first have this opportunity. Whether to take advantage of this opportunity is up to the offender.

*Id*.

Plaintiff asserts in his complaint that the loss of good conduct time he complains of was imposed as a sanction for rule violations at the Jail. (Dkt. # 5, ¶ 13.) Thus, Plaintiff's own allegations demonstrate that he has had an opportunity to earn good time credit while confined at the Jail, but he has forfeited that opportunity by his own misbehavior. Plaintiff's allegations also establish that he has been afforded disciplinary infraction hearings for Jail rule violations which have resulted in the revocation of his good conduct time. (*Id*., ¶ 18.) Accordingly, there appear to be no due process concerns regarding the manner in which the good time credits were revoked.

Plaintiff's position appears to be that revocation of good conduct time credits is simply beyond the scope of what corrections staff may impose for Jail rule violations because such revocations effectively punish an offender by lengthening a potential future sentence without the

REPORT AND RECOMMENDATION
PAGE - 6

offender first having been convicted of an offense. This position disregards state law and common sense. As described above, an offender may earn good time credit during presentence incarceration, but he may also forfeit such credit if he is unable to comport with institutional rules. Though Plaintiff's loss of good time credits may ultimately impact the length of time he is required to serve under any potential criminal sentence, the loss of such credits will not, as he suggests, *add* time to any such sentence.

As Defendants correctly argue, good conduct time acts only to reduce the period of imprisonment imposed for a criminal conviction, the loss of such time does not add to the imposed term of imprisonment. (Dkt. # 19 at 7.) A prisoner who, through his own misbehavior, fails to earn any good time credit merely ends up serving the full amount of the sentence imposed by the trial court, no more and no less. This appears to be the situation Plaintiff will find himself in should he ultimately be convicted of the crimes underlying his current confinement. While this is no doubt an unsatisfactory outcome for Plaintiff, it is not one which implicates his due process rights. Accordingly, Defendants are entitled to summary judgment in this action.

### IV.   CONCLUSION

Based on the foregoing, this Court recommends that Plaintiff's motion for summary judgment (dkt. #18) be denied and that Defendants' unopposed cross-motion for summary judgment (dkt. # 19) be granted. This Court further recommends that Plaintiff's motion to dismiss Defendant Alexis Wafstet (dkt. # 21) be stricken as moot. Finally, this Court recommends that Plaintiff's complaint (dkt. # 5) and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 14, 2020**.

DATED this 22nd day of January, 2020.

*[signature]*

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 8